**NOT FOR PUBLICATION** [55]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

RECKITT BENCKISER INC.  and          :
UCB MANUFACTURING, INC.

                                      :

       Plaintiffs,                           :          Civil Action No. 09-3125 (FLW)

       v.                                           :

                                   :                            **OPINION**

TRIS PHARMA, INC.  and               :
YU-HSING TU,                               :

       Defendants.                         :
_____

**WOLFSON, United States District Judge:**

Presently before the Court is a Motion by Defendants Tris Pharma, Inc. ("Tris") and Yu-Hsing Tu ("Dr. Tu")(collectively referred to as "Defendants") to Dismiss Counts II through V of the Amended Complaint.   The underlying action arises out of, inter alia, the alleged infringement of U.S. Patent No. 5,980,882 ("the '882 patent") based on Tris' submission of an Abbreviated New Drug Application ("ANDA") to market a generic version of  Delsym ®, an over-the-counter cough syrup manufactured by Reckitt Benckiser, Inc. ("Reckitt") and allegedly covered by the '882 patent owned by UCB Manufacturing, Inc. ("UCB").   The instant motion concerns the non-patent Counts contained in Reckitt and UCB's (collectively "Plaintiffs") Amended Complaint – specifically, Count II (Trade Secret Misappropriation), Count III (Unfair Competition), Count IV (Breach of Contract) and Count V (Tortious Interference with Business Expectations).   For the

1

reasons that follow, Defendants' Motion to Dismiss is DENIED in part and GRANTED in part. Specifically, the Court will dismiss Count IV, Plaintiffs' breach of contract claim, without prejudice and deny the motion to dismiss Counts II, III and V.

## I.   BACKGROUND

In addressing Defendants' Motion to Dismiss, this Court must accept as true the allegations contained in the Complaint.  See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir.2003); Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1301 (3d Cir.1996).  Thus, the facts recited herein are taken from the Amended Complaint and do not represent this Court's factual findings.

Plaintiffs manufacture and hold an approved new drug application ("NDA") for Delsym® 7, an over-the-counter cough syrup that contains the active ingredient dextromethorphan polistirex. Compl. ¶ 10.  Delsym® is approved by the FDA to relieve coughing due to throat and bronchial irritation that occurs with the common cold.  Id. ¶ 10.  In or around 2009, Defendant Tris submitted to the FDA an ANDA seeking approval to manufacture, use and sell a generic version of Delsym®.  Id. ¶ 14.

Defendant Dr. Tu is currently the Vice President of Research and Development for Tris.  Id. ¶ 30.  Prior to working at Tris, Dr. Tu spent approximately ten (10) years working in the Research and Development department for predecessors of Plaintiff UCB.  In that capacity, Dr. Tu worked directly on the formulations of Delsym®, including the present formulation.   Id. ¶ 31. Dr. Tu's employment was allegedly subject to several employment and confidentiality agreements pursuant to which, Dr. Tu agreed, in relevant part, not to disclose any secret or confidential

information during or after the termination of his employment with UCB.  Id. ¶¶ 32,33, 34,35,42, 43, 52, 53, 54.  Despite the existence of these agreements, and his awareness of the confidential nature of his work, Plaintiffs allege that when Dr. Tu left UCB to join Tris, Dr. Tu disclosed and utilized confidential information gained at UCB to develop the generic version of Delsym® that is the subject of Tris' ANDA.  Id. ¶¶ 36, 37, 45.  As a result of the alleged disclosure and use of Plaintiffs' trade secrets and confidential information, UCB alleges that it has suffered harm.  Id. ¶¶ 38, 39, 48, 49, 56, 57, 63.

## II.  STANDARD OF REVIEW

When reviewing a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard.  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id. at 561 (quoting Conley, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level."  Id. at 555.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest 'the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough

3

facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element'."  Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the following principles.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949  (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir.2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 1950.  The plausibility standard requires that "the plaintiff plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 129 S.Ct. At 1949 (quoting Twombly, 550 U.S. at 556).  Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."  Fowler, 578 F.3d at 211.  In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

A.   Trade Secret Misappropriation Claim (Count II)

In Count II of the Complaint, Plaintiffs claim that Defendants misappropriated trade secrets comprising "the Delsym ® manufacturing process, Delsym ® formulations, and other private

information concerning Delsym ® and related research and development." Compl. ¶ 26. Specifically, as discussed above, Plaintiffs allege that during Dr. Tu's tenure at UCB, Dr. Tu worked on the formulation of Delsym ®, including the present formulation, and that although Tu was allegedly a party to confidentiality agreements concerning his work on Delsym ®, when Tu left UCB to work for Tris, he disclosed Plaintiffs' trade secrets to Tris. Compl. ¶¶ 31-35. Moreover, Plaintiffs allege that Defendants acquired and used these trade secrets in "the development and formulation of the dextromethorphan polistirex extended release suspension that is the subject of ANDA No. 91-135." Id. ¶ 35.

To prevail on a claim for the misappropriation of a trade secret under New Jersey law, a plaintiff must establish that: "(1) a trade secret exists; (2) the information comprising the trade secret was communicated in confidence by plaintiff to the employee; (3) the secret information was disclosed by that employee and in breach of that confidence; (4) the secret information was acquired by a competitor with knowledge of the employee's breach of confidence; (5) the secret information was used by the competitor to the detriment of plaintiff; and (6) the plaintiff took precautions to maintain the secrecy of the trade secret." Rycoline Prods., Inc. v. Walsh, 334 N.J. Super. 62, 71 (App. Div. 2000). [1]

In the instant motion, Defendants argue that Plaintiffs' claim for misappropriation of trade

---

[1]To the extent that Defendants suggest that there is a choice of law issue on Plaintiffs' claim for Misappropriation of Trade Secrets, Defendants also contend that New York law is similar to New Jersey law and that Plaintiffs have failed to sufficiently plead this Count under either New Jersey or New York law. The Court notes that Plaintiffs failed to brief this issue at all, arguing only under New Jersey law. Because Defendants contend that the law of New Jersey and New York are the same, the Court will apply the law of New Jersey. See, e.g. Arcand v. Brother Intern. Corp, 673 F. Supp.2d 282, 293 (D.N.J. 2009) ("Where there is no actual conflict, the analysis ends and the court applies the law of the forum state.").

secrets must be dismissed under 12(b)(6) for three reasons.  First, Defendants argue that the

Complaint fails to identify any protectable trade secret as required under the first prong of the

test.   Specifically, Defendants contend that Plaintiffs should have identified the alleged trade

secrets since they were "uniquely known to plaintiffs and plaintiffs have been in possession of

Tris Pharma's ANDA for over six months."  Def's Br. at 6.  Moreover, Defendants argue that

under the Patent Act, Plaintiffs have a heightened "obligation to state their purported trade

secrets in a way that at least minimally distinguishes them from information known to the public.

. .[because] the patent at issue in this case covers Delsym.'" Defs' Br. at 6.

Under New Jersey law, a claim of misappropriation of trade secret "does not require specific

pleading of the precise information that constitutes the trade secret in order to survive a motion to

dismiss.  Indeed, 'unless there are heightened pleading requirements as to a particular cause of

action, the Federal Rules of Civil Procedure do not require a plaintiff to plead all the relevant

facts in detail . . . and generally do not require a plaintiff to provide specific information about

trade secrets at this stage of the litigation.'"  Oswell v. Morgan Stanley Dean Witter & Co, No.

06-5814 (JBS), 2007 WL 1756027, at *7 (D.N.J. June 18, 2007); see also Osteotech, Inc. v.

Biologic, LLC, No. 07-1296, 2008 WL 686318, at *5 (D.N.J. March 7, 2008)(explaining that

"[t]here is no heightened pleading standard for a misappropriation claim.")

Here, Plaintiffs have pled the following facts relevant to the existence of a trade secret: (1)

"Plaintiffs are the developers and owners of trade secrets comprising, among other things, the

Delsym® manufacturing process, Delsym® formulations, and other private information

concerning Delsym® and related research and development"; (2) "Plaintiff's trade secrets were

the result of many years of effort by Plaintiffs and their predecessors"; (3) "Plaintiffs' trade

6

secrets derive actual and potential independent economic value from the fact that they are not generally known or readily accessible to the public or others."  Pl's Compl. ¶¶ 26 -28.  Thus, the Court finds that the Complaint sufficiently alleges the existence of a trade secret to meet Rule 8(a).

Moreover, the Court notes that to the extent that Defendants argue that the Supreme Court's decisions in Twombly and Iqbal mandate a different or heightened pleading standard on Plaintiff's claims of misappropriation of trade secret, Defendants have cited no case law in support of this argument.  Indeed, as discussed above, the Third Circuit has reiterated that to survive a motion to dismiss under Twombly and Iqbal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Sheridan v. NGK Metals Corp., 609 F.3d 239, 263 n. 27 (3d Cir. 2010).

In addition, to the extent that Defendants argue that Plaintiffs had a heightened obligation to disclose the trade secret at issue since the patent for Delsym® is public, the Court does not agree.  The Patent Act does not impose a heightened pleading standard for a trade secret misappropriation claim.  Indeed, as Defendants suggest, the Patent Act merely sets forth the requirements for what must be included in a patent application when the application is filed; the statute does not require the disclosure of information discovered after the filing of the application, some of which may be potentially considered a trade secret.  35 U.S.C. § 112;  Pls' Br. at 6.  Moreover,  to the extent that Defendants suggest that Plaintiffs are required to plead factual information above and beyond the information contained in the Patent, i.e., public

7

information, to set forth an allegation that can be understood to constitute a trade secret, Plaintiff's Complaint specifically alleges that the trade secrets comprise the manufacturing process, the drug formulation and, more importantly, "other private information concerning Delsym® and related research and development."  Compl. ¶ 26.[2]  Thus, the Court is satisfied that Plaintiff's pleadings concerning the existence of a trade secret satisfy the first prong of the claim for misappropriation of trade secret under Rule 8(a).

Defendants additionally argue that the Complaint fails to adequately plead the ownership of the trade secrets, how the trade secrets were allegedly communicated to Dr. Tu and how Defendants allegedly acquired and used the trade secrets.  The Court does not agree.

First, the Court finds that the Complaint sufficiently alleges the ownership of the purported trade secrets.  Specifically, the Complaint alleges that Plaintiffs are the "owners of trade secrets comprising. . . the Delsym ® manufacturing process, Delsym ® formulations and other private information concerning Delsym ® and related research and development."  Compl. ¶ 26. Moreover, the Complaint alleges that Dr. Tu had access to the alleged trade secrets during his employment by, inter alia, setting forth Dr. Tu's relevant employment history including that prior to becoming a Vice-President at Tris, Dr. Tu worked for several predecessors of UCB,  Compl.

---

[2] In addition, the Court finds Defendants' reliance on On-Line Techs., Inc. V. Bodenseewerk Perkin-Elmer GmbH, 386 F.3d 1133, 1141 (Fed. Cir. 2004) in support of the assertion that information contained in a Patent cannot be protected as a trade secret to be misplaced.  In On-Line Techs, the Circuit was evaluating a district court's grant of summary judgment on a trade secret claim;  thus, the district court in On-Line Techs was necessarily concerned with the evidence before it.  Conversely, here, this Court is evaluating whether under Rule 8(a) the Complaint contains sufficient factual matter, accepted as true, to state a plausible claim for relief on its face.  The Court is not testing the sufficiency of the evidence since no evidence is before the Court on a motion to dismiss.

¶¶ 30,31, and that during his time at UCB, Dr. Tu "worked directly on the formulation of Delsym®." Compl. ¶ 31.  In addition, the complaint alleges that Defendants allegedly "used Plaintiff's trade secrets in the development and formulation of" the generic version of Delsym "that is the subject of ANDA No. 91-135."  These allegations, albeit untested, adequately allege ownership of the trade secrets, that the trade secrets were communicated to Dr. Tu during his prior employment and that Dr. Tu shared these secrets with Tris, his new employer.

Finally, despite Defendants' suggestion to the contrary, the Court notes that information concerning Defendants' alleged use of the trade secret may, at this juncture, be solely within the Defendants' knowledge.  See, e.g., Davis v. Frederick, Civil Action No. 10-cv-2119, 2010 WL 3566833, at *3 (E.D. Pa. Sept. 9, 2010)( "To the extent that the Complaint does not contain more specific factual allegations concerning the actual policies and procedures. . .this is because Defendant, not Plaintiffs, is in possession of, and knowledgeable about, such policies. Defendant can thus begin to formulate a defense based on the allegations contained in the Complaint; if no details about the specific policies and procedures emerge during discovery, Defendant can move for summary judgment."); Pennfield Precision, Inc. v. EF Precision, Inc., No. CIV.A. 00-280, 2000 WL 1201381, at * 4-5 (E.D. Pa. Aug. 15, 2000)(explaining, in the context of a motion to dismiss a claim for misappropriation of trade secret, that "plaintiff's complaint asserts that particular bids were lost due to defendant's unlawful use of plaintiff's confidential information . . . In a motion to dismiss, it is not the court's duty to consider the merits or validity of the facts, but rather to assess whether such facts, taken wholly as true, state a claim that would entitle plaintiff to relief."). Thus, at this early stage in the litigation, prior to the close of discovery, the Court finds that Plaintiffs have adequately pled a claim for trade secret misappropriation.

9

B.  Breach of Contract (Count IV)[3]

Next, Defendants argue that Plaintiffs' breach of contract claim should be dismissed because the Complaint fails to identify the contract at issue and the ways in which Dr. Tu allegedly breached such a contract.   Specifically, Defendants contend that Plaintiffs have failed to adequately plead a breach of contract claim because, inter alia, Plaintiffs have not identified any specific contract or any specific contract provision that Dr. Tu allegedly breached.  Def's Br. at 11-12.  The Court agrees.

To establish a breach of contract claim under New York law, a plaintiff must prove: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  Oberstein v. Sunpower Corp., No. 07-CV-1155, 2010 WL 1705868, at * 5 (E.D.N.Y. Apr. 28, 2010) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir.1996)).  A breach of contract claim will withstand a motion to dismiss only if plaintiff  "allege[s] the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated."  Id. (quoting Sirohi v. Trs. of Columbia Univ., No. 97-7912, 1998 WL 642463, at *2 (2d Cir. Apr.16, 1998)).

In Oberstein, for example, the court held that a pro se plaintiff sufficiently pled a breach of contract where the complaint set forth the existence of an "installer-Partner" agreement with

---

[3]The Court notes that the Complaint alleges that "Dr. Tu's employment with Medeva was governed by . . .contracts which are valid and enforceable pursuant to the laws of the State of New York."  Thus, the Court will only consider this claim under New York law.

defendants and contained "several paragraphs that discuss[ed] the terms of the" relevant agreement.  2010 WL 1705868 at *5.  Specifically, the <u>Oberstein</u> court explained that plaintiff alleged that under the relevant agreement, defendant "was to continue its efforts to increase the sales, marketing, and promotion of its solar modules . . . [and] to generate leads for plaintiff in plaintiff's markets.  <u>Id</u>.  In addition, under the terms of the agreement, plaintiff was "bound to continue to perform sales, surveys, evaluation, design, permitting, testing, and commissioning, and to conduct inspections with local authorities and perform all mechanical and electrical construction."

Unlike the plaintiff in <u>Oberstein</u>, Plaintiffs here have not identified any specific contract or contracts that governed Dr. Tu's employment and have entirely failed to identify or describe any of the provisions or terms of the agreement relevant to this dispute.  Instead, Plaintiff's Complaint merely alleges conclusorily  "[o]n information and belief, Tu's employment with Medeva was governed by and subject to several employment and confidentiality contracts," and that " by entering into those contracts, Tu agreed . . .not to disclose any of Plaintiffs' secret or confidential information."  Compl. ¶¶ 52, 53.  Importantly, although allegations based on "information and belief" are typically sufficient to survive a 12(b)(6) motion when the truth of these allegations can reasonably be expected to be revealed in discovery, <u>see Church and Dwight Co, Inc. v. SPD Swiss Precision Diagnostics, GmBH</u>, Civ. A. No. 10-453, 2010 WL 5239238, at n.1 (D.N.J. Dec. 16, 2010), here, Plaintiffs have additionally argued that they retained "all rights and interests . . . from predecessor companies" including the relevant "employment contracts," yet Plaintiffs have not asserted that they are aware of the existence of such agreements other than "upon information and belief" and have not identified the content of any such agreement.  Pls'

Br. at 11; Compl. ¶ 13.   In other words, despite the suggestion that these agreements should be in

Plaintiffs' possession, Plaintiffs have not even pled knowledge of the existence of these contracts

other than "on information and belief."  Compl. ¶¶ 52-54.    For these reasons, the Court finds

that Plaintiffs  have failed to allege a claim for breach of contract and will dismiss this Count

without prejudice.

C.   Count V (Tortious Interference)

Defendants also contend that Plaintiffs' claim for tortious interference should be dismissed

for failing to state a claim.  To state a claim for tortious interference under New Jersey law, a

plaintiff must allege that: "(1) it had a continuing or prospective economic relationship or

reasonable expectation of economic advantage; (2) the defendant knew of such relationship of

expectancy; (3) the interference and harm inflicted were done intentionally and with 'malice' in

the sense of conduct that is wrongful and without justification or excuse; (4) if not for the

interference, it was reasonably probable that plaintiff would have realized its economic

advantage; and (5) the plaintiff was injured as a result of defendant's conduct."  See Fineman v.

Armstrong World Indus., Inc., 980 F.2d 171, 186 (3d Cir.1992);  Printing Mart-Morristown v.

Sharp Electronics Corp., 116 N.J. 739, 751-52 (1989). [4]

---

[4]The Court notes that as with their argument concerning Count II, Defendants again contend that New York law is similar to New Jersey law and have cited law from both states in support of their argument.  Under New York law, a claim for tortious interference requires a plaintiff to allege that: (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir.2003).  Because New York law is nearly identical to New Jersey law, the Court will apply the law of New Jersey.  See,

Initially, Defendants argue that Plaintiffs' Complaint fails to identify any business relations

with which Defendants allegedly interfered.  To establish the first prong of the tortious

interference claim, a plaintiff must allege facts "giving rise to some 'reasonable expectation of

economic advantage.'" Printing Mart-Morristown, 116 N.J. at 751 (1989) (citations omitted).

 For example, in Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH,

Civil Action No. 10-453, 2010 WL 5239238, at *4 (D.N.J. Dec. 16, 2010), this Court held that

plaintiff had satisfied the first prong of the test since it alleged that it "actively markets and

distributes its pregnancy tests. . . that Consumers Union informed Plaintiff that it would be

publishing the results of a study favorable to C & D in Consumer Reports, a magazine read by

millions of consumers, and that Plaintiff received economic benefit from a similar study

published several years earlier."  Id.  In light of these factual allegations, this Court found that

plaintiffs had sufficiently alleged a reasonable expectation of prospective economic gain. Id.

 Conversely, in Bayer Schera Pharma AG v. Sandoz, Inc., Nos. 08 Civ. 03710, 2010 WL

1222012 (S.D.N.Y. March 29, 2010), the court held that plaintiffs' allegation that they

maintained "a continuing economic advantageous relationship with others for the supply of its

generic products,"  was insufficient to establish a claim of tortious interference.  Id. at *8.

Specifically, the court explained that plaintiffs had failed to identify "any specific business

entities with which it had business relationships."

 In the instant matter, Plaintiffs allege that they had a "reasonable expectation of prospective

economic gain from its business relationships with distributors and from sales to the general

---

e.g. Arcand v. Brother Intern. Corp, 673 F. Supp.2d 282, 293 (D.N.J. 2009) ("Where there is no
actual conflict, the analysis ends and the court applies the law of the forum state.").

public of Delsym®."  Compl. ¶ 60.   Thus, unlike plaintiffs in Bayer Schera, here, the Plaintiffs

have alleged specific business entities – distributors and the general public – with which it had

business relations.  Although the Court finds that this particular allegation is minimal, under New

Jersey law, a complaint must merely demonstrate that a plaintiff  "was in "pursuit of business."

Printing Mart, 116 N.J. at 739; see Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 747

(3d Cir.1996);  Med Alert, 2007 WL 2297335 at *16.  Thus, the Court finds that Plaintiff's

allegation satisfies the first prong of this test.

Defendants additionally argue that Plaintiffs have failed to allege that Defendants acted with

malice.  Specifically, Defendants allege that Plaintiffs cannot establish "malice" merely by filing

an ANDA, since the filing of an ANDA is "expressly authorized by federal law."  Defs' Br. at

15.  The Court does not agree with Defendants' limited view of Plaintiffs' Complaint.

A showing of malice, as required by the third prong of a tortious interference claim, is not

used in the literal sense requiring a showing of ill will toward the plaintiff.  Printing Mart, 116

N.J. at 756; see Pactiv Corp. v. Perk-Up, Inc., No. 08-05072, 2009 WL 2568105, at *12 (D.N.J.

Aug.18, 2009).   Instead, for the purposes of this prong, malice is defined as a harm that was

inflicted intentionally and without justification or excuse.  Id.  The relevant inquiry is whether the

defendant's conduct was sanctioned by the "rules of the game."  Printing Mart, 116 N.J. at 757

Here, Plaintiff's Complaint alleges that Defendant wrongly and intentionally interfered with

Plaintiffs' expectation of economic benefit by wrongfully "tak[ing] and implement[ing]

Plaintiffs' trade secrets, and confidential information."  Compl. ¶ 62.  Thus, despite Defendants'

argument to the contrary, Plaintiffs have not alleged that Defendants acted with malice by filing

14

an ANDA to market a generic version of Delsym; instead, the Complaint alleges that Defendants unlawfully took and utilized Plaintiffs' trade secrets, the use of which will interfere with Plaintiff's sales of Delsym' to the general public.  Accordingly, the Complaint sets forth "enough factual matter (taken as true) ... to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  Phillips, 515 F.3d at 234 (citing Twombly, 550 U.S. at 556) (internal quotations omitted). Whether or not Defendant did, in fact, act with "malice," is an issue of fact, not appropriately decided on a motion to dismiss.

D.  Count III (Unfair Competition)

Finally, Defendants contend that Plaintiffs' claim for unfair competition should be dismissed for failing to set forth the required elements of the claim.[5]  The Court does not agree.

New Jersey's common law of unfair competition "is an amorphous area of jurisprudence. It knows of no clear boundaries . . .The concept is as flexible and elastic as the evolving standards of commercial morality demand." Duffy v. Charles Schwab & Co., Inc., 123 F. Supp. 2d 802, 815 (D.N.J. 2000) (quoting N.J. Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc., 144 N.J. Super. 411, 427 (Ch. Div.1976)).  The "prevention of unfair competition is not circumscribed by rigid rules . . . [and] equity has grown more vigilant in the search for efforts on the part of one competitor to capitalize on the good will of another, to pass off his goods as those of another, or to pirate the trade of his competitor by unfair or deceptive practices."  Sachs Furniture & Radio

---

[5]Because Plaintiff's Count of Unfair Competition does not reference a statute, the Court understands this claim as arising under the common law of New Jersey.

15

Co. v. Sachs Quality Stores Corp., 39 N.J. Super. 70, 85 (App.Div.1956).  Indeed,  the essence of

New Jersey's unfair competition law is fair play, "[t]hus the purpose of the law . . . is to promote

higher ethical standards in the business world."  Ryan v. Carmona Bolen Home for Funerals, 341

N.J. Super. 87, 94 (App. Div.2001) (citing Columbia Broadcasting Sys. v. Melody Recordings,

134 N.J. Super. 368, 376 (App. Div.1975)).

However, the common law of unfair competition is not completely boundless.  "The law of

unfair competition has its roots in the common-law tort of deceit: its general concern is with

protecting consumers from confusion as to source."  Bonito Boats, Inc. v. Thunder Craft Boats,

Inc., 489 U.S. 141, 157 (1989).  Indeed, it has been stated that "[t]he essence of unfair

competition is the practice of palming off one's product as that of another."  Squeezit Corp. v.

Plastic Dispensers, 31 N.J.Super. 217, 222 (App. Div.1954).  Although most cases of unfair

competition encompass one of two business torts: the passing off of one's goods or services as

those of another and unprivileged imitation, SK & F, Co. v. Permo Pharm. Lab., Inc., 625 F.2d

1055, 1062 (3d Cir. 1980), an action for unfair competition need not necessarily be based on

those two torts alone.  Duffy, 97 F. Supp.2d at 601 n. 8.

Thus, "[a]lthough it is impossible to categorize all acts which constitute unfair competition,

there are a few fundamental elements that are definite.  In essence . . . it consists of the

misappropriation of one's property by another-property which has some sort of commercial or

pecuniary value."  Hillman-Kohan, 144 N.J.Super. at 427-28 (citations omitted). Additionally,

"[a] prima facie case of unfair competition, like tortious interference and employee piracy,

requires evidence of bad faith or malicious conduct."  Samsung America Inc. v. Park, 2006 WL

3627072 at * 17 (N.J. Super. Ct. App. Div. December 11, 2006).

16

Here, Plaintiffs allege that Dr. Tu had access to confidential information and was aware of the confidential nature of his work.  Compl. ¶¶ 42, 43.  Moreover, Plaintiffs allege that despite a "duty to Plaintiffs to maintain the secrecy and limit the use of Plaintiffs' confidential information," Dr. Tu disclosed this information to Tris and utilized this information to "manufacture, use, or [sell] . . .a product that directly competes with Delsym®."   Thus, the Court finds that Plaintiffs have adequately pled a claim for unfair competition under Rule 8(a).

III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED in part and GRANTED in part.  Specifically, the Court will dismiss Count IV for Breach of Contract without prejudice and deny the motion as to Counts II, III and V.

Dated: February 28, 2011                              /s/ Freda L. Wolfson_____
                                                      Freda L. Wolfson, U.S.D.J.