<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **RECKITT BENCKISER INC., et al.,** : | Civil Action No.: 09-3125 (FLW) |
| : | |
| **Plaintiffs,** : | |
| : | |
| v. : | **MEMORANDUM OPINION** |
| : | **AND ORDER** |
| **TRIS PHARMA, INC., et al.,** : | |
| : | |
| **Defendants.** : | |
| _____ : | |

<u>**ARPERT, U.S.M.J**</u>

This matter having come before the Court on the informal application of Defendants Tris Pharma, Inc. ("Tris") and Yu-Hsing Tu ("Tu") (collectively, "Defendants"), by letter to the Court dated July 28, 2011, for an Order imposing sanctions pursuant to FED. R. CIV. P. 37 based on Plaintiffs' Reckitt Benckiser Inc. ("Reckitt") and UCB Manufacturing, Inc. ("UCB") (collectively, "Plaintiffs") failure to comply with the Court's May 24, 2011 Order.  Plaintiff submitted opposition in a letter dated August 10, 2011.  The Court conducted oral argument, by telephone, on September 22, 2011.  For the reasons stated on the record and herein, Defendants' application for sanctions is denied.

In sum, Plaintiffs – as the holder of an approved new drug application ("NDA") no. 18-658 for Delsym extended release liquid suspension which contains the active ingredient dextromethorphan polistirex – filed a Complaint against Tris on June 26, 2009 alleging infringement of United States Letters Patent No. 5,980,882 ("'882 patent") which "claims certain pharmaceutical compositions using a drug-resin complex and a chelating agent and certain methods of making these pharmaceutical compositions".  *See* Pl.'s Compl., dkt. entry no. 1 at 1-3. Plaintiffs allege that by submitting an abbreviated new drug application ("ANDA") under the

provisions of 21 U.S.C. § 355 (j) before the expiration of the '882 patent – specifically, seeking approval to engage in the commercial manufacture, use, and sale of dextromethorphan polistirex extended release suspension – Tris committed an act of infringement under 35 U.S.C. § 271(e)(2) and will also infringe one or more claims of the '882 patent. *Id*. at 4. As a result, Plaintiffs claim that they are entitled to a Court Order stating that the effective date of any approval of Tris' ANDA be no earlier than after the expiration date of the '882 patent pursuant to 35 U.S.C. § 271(e)(4) and an award of damages for any commercial sale or use by Tris with respect to the subject matter claimed in the '882 patent. *Id*. at 5. Plaintiffs also claim that they are entitled to reasonable attorneys' fees, judgment that Tris infringed one or more claims of the '882 patent, and a permanent injunction against Tris from engaging in the commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of Tris' product. *Id*. at 5-7. On June 11, 2010, Plaintiffs filed an Amended Complaint adding Dr. Tu as a defendant and adding additional counts of trade secret misappropriation, unfair competition, breach of contract, and tortious interference with business expectations. *See* Pl.'s Amended Compl., dkt. entry no. 51 at 1-15. On February 28, 2011, the Court dismissed Count IV (breach of contract) of Plaintiffs' Amended Complaint without prejudice based on Plaintiffs' failure to identify any specific contract or contracts that governed Dr. Tu's employment and failure to identify or describe any of the provisions or terms of the agreement relevant to this dispute. *See* dkt. entry nos. 79-80.

With this informal application, Defendants contend that despite the Court's May 24, 2011 Order compelling Plaintiffs "to produce documents concerning the Delsym formulation prior to the addition of EDTA and information concerning the other claimed drugs...by June 24, 2011", Plaintiffs "have still not produced...documents underlying examples 1, 3 and 4 of the '882

patent". *See* Def.'s Letter dated July 28, 2011 at 1; *see also* dkt. entry no. 86. As a result, Defendants seek discovery sanctions and request that the Court "grant an adverse inference...in favor of Defendants... that examples 1, 3, and 4 of the '882 patent were never conducted". *Id*. at 2. Defendants argue that the above-referenced documents are "responsive to...document request no. 67, which was served [in] March 2010, and that these documents "have been the subject of numerous letters dating to April 2010". *Id*. at 2-3. Despite Defendants repeated requests and the Court's May 24, 2011 Order, and although Plaintiffs "have produced some documents relating to the examples", Defendants maintain that Plaintiffs "still have not produced any underlying information for example 1", have "not produced any stability information for formulations without EDTA for examples 3...and 4", and "have produced stability information for only one of the three formulations" that make up example 4. *Id*. at 3. Based upon the deposition testimony of UCB's IT manager, David Burke ("Burke"), and the inventor of the '882 patent, Dr. Martin L. Eichman ("Eichman"), Defendants argue that "UCB failed...to attempt to comply with the Court's May 24 Order" because UCB "never consulted the most knowledgeable person about the '882 patent examples in its document collection efforts". *Id*. at 3-4. Further, based upon the deposition testimony of John Bordeau ("Bordeau"), Plaintiffs' 30(b)(6) deponent on secondary considerations except commercial success, Defendants argue that "imposition of...an adverse inference would not be unfair to Plaintiffs because there are strong reasons to infer that the data underlying the examples of the '882 patent never existed in the first place". *Id*. at 4-5.

     Separately, Defendants contend that Plaintiffs "waited until July 1, 2011...to update their interrogatory responses to include secondary considerations of non-obviousness" including "commercial success, unmet need, copying, and praise of others" – all of which "were in [Plaintiffs'] exclusive control...despite Defendants' repeated requests for timely

3

supplementation". *Id*. at 1. As a result, Defendants seek discovery sanctions and request that the Court preclude "secondary considerations disclosed in Plaintiffs' July 1, 2011 supplementation". *Id*. at 2. Defendants maintain that "Plaintiffs' failure to supplement timely...has prejudiced Defendants' ability to prepare their case" because "30(b)(6) depositions taken of Plaintiffs on secondary considerations proceeded...without this information" and "there is no time for further fact discovery on these late-disclosed topics". *Id*. at 1, 5. Defendants argue that the above-referenced information was responsive to Defendants' "interrogatory 5...which was served in October 2009", that this information "has been the subject of numerous letters between the parties...dating...to February 2010", and that Plaintiffs' failure to supplement until the last minute is a violation of Rule 26(e). *Id*. at 5-6. Despite Defendants' repeated requests and "the fact that Plaintiffs have served supplemental responses to other interrogatories", Defendants' maintain that Plaintiffs "waited until a week before the close of fact discovery" and until the day after Bordeau's deposition "to identify the secondary considerations that they are now alleging". *Id*. at 6. Defendants argue that "Plaintiffs' late supplementation is entirely inconsistent with...New Jersey's Local Patent Rules for timely and fair disclosure of invalidity contentions, responses, and supplements". *Id*. at 7; *see also* FED. R. CIV. P. 26(e); L. PAT. R. 3.7; L. PAT. R. 3.3; *Ormco Corp. v. Align Technology, Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006). Defendants' argue that "Plaintiffs' untimely supplementation is unjustified" given that Plaintiffs "had this information all along" and, further, that Plaintiffs' untimely supplementation "has harmed Defendants' ability to prepare their case to defend against these newly disclosed secondary considerations of nonobviousness" given that "Plaintiffs have limited their production of marketing materials to documents sufficient to show the marketing of Delsym with EDTA" and given that Plaintiffs' "30(b)(6) witness on [the] commercial success of Delsym was unprepared

4

to testify about topics...relevant to commercial success including the required nexus between the success being asserted and the '882 patent claims". *Id*. at 7-8. Defendants note that "[i]n order to support these late-disclosed secondary considerations, Plaintiffs continued to produce documents long after the close of fact discovery". *Id*. at 8. Here, Defendants maintain that they "suffered unfair surprise...[and prejudice] when Plaintiffs finally updated their response to interrogatory 5" as it "did not allow time for Defendants to analyze fully Plaintiffs' new arguments...[and] incorporate them into Defendants' trial strategy", "prevented Defendants from effectively questioning Plaintiffs' witnesses on these topics", and "prevented Defendants from being able to take third-party discovery on these secondary considerations". *Id*. Based upon the fact that fact discovery is now closed and a trial date has been set, Defendants argue it is "too late for Plaintiffs to try and cure the prejudice" demonstrated and therefore the Court "should preclude Plaintiffs from relying on their July 1, 2011 disclosure of secondary considerations of nonobviousness of commercial success, unmet need, copying, or praise of others". *Id*. at 8-9.

In opposition, Plaintiffs maintain that they "fully complied" with the Court's May 24, 2011 Order by "conduct[ing] a thorough search for the data relating to the ['882] patent's codeine examples" and "an extensive search to locate and produce" documents "relating to the use of EDTA with other active ingredients" at "multiple facilities, including...UCB's off-site storage center Iron Mountain, both of UCB's in-house storage sites, room inspections of UCB's laboratories and offices, documents from the inventor's personnel files, documents from various departments at Reckitt, and various electronic media sources". *See* Pl.'s Opp'n Letter dated August 10, 2011 at 1-2. As a result, "Plaintiffs produced nearly 100,000 pages of documents". *Id*. at 2. Subsequent to the entry of the Court's May 24, 2011 Order, "Plaintiffs conducted additional searches" and, as a result, "produced additional responsive documents". *Id*. Plaintiffs

5

maintain that "because the work underlying the patent examples was conducted more than a decade ago (and by predecessor companies to UCB), additional documents underlying the patent examples simply cannot be found". *Id*. Plaintiffs argue that Defendants "mischaracterize the deposition of...Burke", as Burke "did not have knowledge regarding what documents were ultimately produced in response to the Court's May 24, 2011 Order", that the testimony cited regarding search terms related "only to searches done of an electronic system that catalogs hard-copy documents stored onsite by UCB and did not relate to other collection efforts by UCB", that Burke "sought to identify all reasonable sources of documents on counsel's behalf...which were later thoroughly reviewed and produced to Defendants", and that testimony "showing a reasonable and thorough search was conducted" was ignored in Defendants' papers. *Id*. at 2-4. Further, Plaintiffs claim that Defendants' contention regarding Eichman is inaccurate – "Eichman is not the most knowledgeable person about the present whereabouts of the documents in question" as he "has been retired for over ten years [and] has no current knowledge regarding the existence of various documents at UCB and does not recall the data underlying the patent examples for codeine" – such that "no additional information regarding the current location of potentially responsive documents would have been obtained" if Burke had consulted with Eichman. *Id*. at 3. Plaintiffs represent that they "conducted a reasonable search, produced all responsive documents that could be located by that search", "complied with the Court's Order", and "are not withholding any relevant documents". *Id*. at 4. Thus, Plaintiffs argue, Defendants' informal application should be denied because "Defendants have not established any prejudice resulting from Plaintiffs' inability to locate all documents relating to examples of the '882 patent" and "have not shown any prejudice will be cured by precluding Plaintiffs from relying on documents that have been produced...or by imposing an adverse inference that work underlying

6

certain examples of the '882 patent was never conducted". *Id*. at 4-5.

Separately, Plaintiffs maintain that they "supplemented their interrogatory responses regarding secondary considerations of non-obviousness" prior to the close of fact discovery on July 1, 2011 pursuant to FED. R. CIV. P. 26(e) and, thereafter, "provided three 30(b)(6) witnesses to provide testimony regarding the facts underlying the assertions in those supplemental responses" prior to the exchange of discovery. *Id*. at 5. Plaintiffs contend that their supplementation was timely, within the Federal Rules, and did not prejudice Defendants. *Id*. at 5. Specifically, Plaintiffs argue that the "Amended Local Patent Rules cited by Defendants were adopted in 2011" and "do not apply retroactively to impose broader obligations on Plaintiffs" given that this case was filed in June 2009 and, further, that "the Local Patent Rules apply to responses to invalidity contentions under a set schedule prescribed by those Rules" but "do not apply to Plaintiffs' responses to Defendants' interrogatories in this action". *Id*.; *see also* L. CIV. R. 9.3; *Dejesus Corona v. Derosa*, 325 F. Supp. 2d 516, 521 (D.N.J. 2004). Plaintiffs claim that they "should be allowed to rely on their July 1, 2011 supplemental interrogatory responses" because Defendants "have not suffered prejudice or unfair surprise" given that Plaintiffs "provided full discovery regarding their supplemental contentions...including citing relevant documents and providing deposition witnesses to...[testify] regarding the factual basis for each of the secondary considerations identified in Plaintiffs' July 1, 2011 supplemental responses". *Id*. at 5-6. Citing *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010) and *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1365 (Fed. Cir. 2008), Plaintiffs argue that the timing of their "responses and depositions did not prejudice Defendants" because "secondary considerations are responsive to Defendants' obviousness assertions" and, as such, "Defendants need not respond to those allegations in expert

7

reports until reply reports are submitted on August 24, 2011". *Id*. at 6. In fact, Plaintiffs note that Defendants "have produced key witnesses and documents well after the fact discovery period", that Defendants' "position is inconsistent with the fact that they...asserted new contentions well after the end of fact discovery", that "Defendants raised new invalidity assertions after the close of discovery in an expert report served on July 27, 2011" despite the fact that these arguments were never previously disclosed, and that Defendants' position is inconsistent with the fact that they "indicated that they would be supplementing their invalidity contentions" during the July 14, 2011 telephone conference. *Id*. Thus, Plaintiffs argue that they "should be allowed to rely on the secondary considerations identified in their July 1, 2011 supplemental interrogatory responses" and that "Defendants' request for sanctions should be denied". *Id*. at 6-7.

As to Defendants' contention that Plaintiffs have failed to produce relevant documents, the Court notes that pursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence". Pursuant to FED. R. CIV. P. 34(a), "[a] party may serve on any other party a request within the scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs,

8

sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form[,] or (B) any designated tangible things...". "In the context of FED. R. CIV. P. 34(a), so long as the party has the legal right or ability to obtain the documents from another source upon demand, that party is deemed to have control". *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004); *see also Poole v. Textron*, 192 F.R.D. 494, 501 (D. Md. 2000); *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3d Cir. 1988). Notably, "[t]he party resisting discovery has the burden of clarifying and explaining its objections and to provide support therefor". *Tele-Radio Systems, Ltd. v. De Forest Electronics, Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981); *see also Gulf Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 916-17 (E.D. Pa. 1979); *Robinson v. Magovern*, 83 F.R.D. 79, 85 (E.D. Pa. 1979).

As to Defendants' contention that Plaintiffs' supplemental answers to interrogatories were untimely, the Court notes that pursuant to FED. R. CIV. P. 26(e)(1), "[a] party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing...". Given that this is a patent case, the Court notes that the Local Patent Rules for the District of New Jersey became effective January 1, 2009 and were subsequently amended in 2011. *See* Lite, *New Jersey Federal Practice Rules*, L. CIV. R. 9.3. comment 1; *see also* L. CIV. R. 9.3; L. CIV. R. 9.3 Report of the Local Patent Rules Committee, Explanatory Notes for 2011 Amendments. "For actions pending prior to the effective date, the Court will confer with the parties and apply...[the Local Patent Rules] as

the Court deems practicable" (L. PAT. R. 1.4) and "[i]t is within the Court's discretion to apply the rules retroactively" (*see also Warner Chilcott Labs. Ir. Ltd. v. Impax Labs., Inc.*, 2010 U.S. Dist. LEXIS 5247, at *14 (D.N.J. 2010)).

The Court notes that with respect to the imposition of sanctions, FED. R. CIV. P. 37 provides:

> (b) (2) Sanctions in the District Where the Action Is Pending.
> (A) For Not Obeying a Discovery Order.  If a party or a party's officer, director, or managing agent – or a witness designated under Rule 30(b)(6) or 31(a)(4) – fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:
> > (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> > (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> > (iii) striking pleadings in whole or in part;
> > (iv) staying further proceedings until the order is obeyed;
> > (v) dismissing the action or proceeding in whole or in part;
> > (vi) rendering a default judgment against the disobedient party; or
> > (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
> ...
> (C) Payment of Expenses.  Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

> (c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
>> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>>> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>>> (B) may inform the jury of the party's failure; and
>>> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

"Rule 37...authorizes the Court to sanction a party for discovery abuses", as the "rule's purposes are to: (1) penalize the culpable party or attorney; (2) deter others from engaging in similar conduct; (3) compensate the court and other parties for the expense caused by the abusive conduct; and (4) compel discovery and disclosure". *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 99 (D.N.J. 2006); *see also Nat'l Hockey League*, 427 U.S. at 643; *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985). "In addition to Rule 37 powers, a district court's inherent powers include an investigation of whether a fraud has been committed upon the court and the power to dismiss a suit outright in response to litigation abuses". *Id.* at 100; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991); *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 n.10 (3d Cir. 1995); *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 566 (3d Cir. 1985). "A court also has the power to assess attorney's fees when it finds that a party has acted in bad faith, vexatiously, wantonly or for oppressive reasons, a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order, or a fraud has been practiced upon it, or that the very temple of justice has been defiled". *Id.*; *see also Chambers*, 501 U.S. at 45-46; *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240,

258-59 (1975); *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946); *Hutto v. Finney*, 437 U.S. 678, 689 (1978).  However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion...a primary aspect of which is the ability to fashion an appropriate sanction for conduct which abuses the judicial process".  *Id.*; *see also Chambers*, 501 U.S. at 44-45.

"In the Third Circuit, a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified".  *Id.*; *see also Republic of Philippines*, 43 F.3d at 74.  "The Court of Appeals instructs district courts to be guided in their application of their inherent powers by the same considerations that guide them in the imposition of sanctions under the Federal Rules: first a court considers the conduct at issue and explains why the conduct warrants sanctioning, and second it considers the range of permissible sanctions and explains why less severe alternatives to the sanction imposed are inadequate or inappropriate".  *Id*.  "The Third Circuit has advised that a pattern of wrongdoing may require a stiffer sanction than an isolated incident and that a grave wrongdoing may compel a more severe sanction than might a minor infraction".  *Id*.  "Further, wrongdoing that actually prejudices the wrongdoer's opponent or hinders the administration of justice may demand a stronger response than wrongdoing that fails to achieve its untoward object".  *Id*. at 100-101.  "When...a court is asked to sanction a party by depriving the party of the right to proceed with or defend against a claim, the court applies the analysis established in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984)".  *Id*. at 101; *see also Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1148 (3d Cir. 1990); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 919 (3d Cir. 1992).  "Under *Poulis*, a court considers":

>	(1) the extent of the party's personal responsibility;
>	(2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;
>	(3) a history of dilatoriness;
>	(4) whether the conduct of the party or the attorney was willful or in bad faith;
>	(5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and
>	(6) the meritoriousness of the claim or defense.

*Id.*; *see also Poulis*, 747 F.2d at 868. However, "[n]ot all six factors are necessary for the entry of default". *Id.*; *see also Hoxworth*, 980 F.2d at 919. "*Poulis* requires the District Court only to balance the six factors and does not set one factor forth as determinative". *First Franklin Fin. Corp. v. Rainbow Mortg. Corp.*, 2010 U.S. Dist. LEXIS 131766, at *21 (D.N.J. 2010); *see also Chiarulli v. Taylor*, 2010 U.S. Dist. LEXIS 32618 (D.N.J. 2010). "*Poulis* does not provide a magic formula in which the decision to enter sanctions becomes a mechanical calculation". *First Franklin*, 2010 U.S. Dist. LEXIS 131766, at *21; *see also Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992); *Nat'l Hockey League*, 427 U.S. at 643. In the Third Circuit, "[e]ntry of default is generally disfavored" and there is a "strong preference that cases be decided on the merits". *Ruhle v. Hous. Auth. of City of Pittsburgh*, 54 Fed. Appx. 61, 62 n.1 (3d Cir. 2002); *see also Medunic v. Lederer*, 533 F.2d 891, 893-94 (3d Cir. 1976); *Wachtel*, 239 F.R.D. at 101; *Scarborough v. Eubanks*, 747 F.2d 871, 878 (3d Cir. 1984). "Default is an extreme sanction that must be reserved for instances in which it is justly merited". *Wachtel*, 239 F.R.D. at 101; *see also Poulis*, 747 F.2d at 867-68, 869-70; *Harris v. City of Philadelphia*, 47 F.3d 1311, 1331 (3d Cir. 1995).

Initially, the Court notes that the Complaint in this matter was filed on June 26, 2009 (*see* Pl.'s Compl., dkt. entry no. 1), fact discovery ended on July 8, 2011, and expert discovery ended on September 16, 2011 (*see* dkt. entry no. 88). With respect to Defendants' application for

sanctions related to the Court's May 24, 2011 Order (*see* dkt. entry no. 86), the Court finds that even if Plaintiffs were not fully in compliance with their discovery obligations prior to the entry of the Order (*see* Pl.'s Opp'n Letter dated August 10, 2011 at 1-2), Plaintiffs have conducted an adequate search for documents responsive to Defendants' requests and the May 24, 2011 Order, and the Court accepts Plaintiffs' representation that they have produced "all responsive documents" within their possession, custody, or control and "are not withholding any relevant documents" (*Id*. at 2-5). Thus, the Court finds that Defendants have failed to demonstrate that sanctions pursuant to FED. R. CIV. P. 37 are appropriate and, therefore, denies Defendants' request.

With respect to Defendants' application for sanctions related to Plaintiffs' July 1, 2011 supplemental interrogatory response, the Court acknowledges that FED. R. CIV. P. 26(e)(1)(A) requires timely supplementation of answers to interrogatories and that Plaintiffs failed to do so with respect to their answer to interrogatory no. 5 – an interrogatory which was originally served in October 2009 – until July 1, 2011 despite Defendants' repeated requests. *See* Pl.'s Opp'n Letter dated August 10, 2011 at 5-7; *see also* Def.'s Letter dated July 28, 2011 at 5-9. And the Court, accepting Plaintiffs' representations that they "provided full discovery regarding their supplemental contentions, including citing relevant documents and providing deposition witnesses to provide testimony regarding the factual basis for each of the secondary considerations identified", that Defendants did not "need...[to] respond to those allegations in expert reports until reply reports [were] submitted on August 24, 2011", and that Defendants "asserted new contentions...after the end of fact discovery" and "indicated that they would be supplementing their invalidity contentions" during the July 14, 2011 conference with the Court, the Court finds that any prejudice suffered by Defendants does not rise to the level of

sanctionable conduct.  Under *Poulis*, the Court finds that although Plaintiffs may be responsible for the late supplementation at issue, there is no indication that Plaintiffs' conduct was willful or in bad faith, Plaintiffs have not demonstrated any history of dilatoriness, and Plaintiffs have demonstrated that their claims may have merit during the pendency of this litigation.  The Court finds that any prejudice suffered by Defendants could be addressed by way of their expert(s)' reply and cross-examination of witnesses and experts at trial related to the documents produced and secondary considerations asserted.  As a result, the Court finds that precluding the secondary considerations asserted by Plaintiffs on July 1, 2011 would result in more substantial prejudice accruing to Plaintiffs by preventing a complete adjudication of this matter on the merits and, therefore, denies Defendants' request.

Having considered the papers submitted and the opposition thereto, and having conducted oral argument on September 22, 2011, and for the reasons stated on the record and set forth above;

**IT IS** on this 18th day of October, 2011,

**ORDERED** that Defendants's informal application for an Order imposing sanctions pursuant to Fed. R. Civ. P. 37 is **DENIED**.

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**