**NOT FOR PUBLICATION** [152]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————
RECKITT BENCKISER INC.  and      :
UCB MANUFACTURING, INC.

                                  :

       Plaintiffs,           :       Civil Action No. 09-3125 (FLW)

       v.               :

                                    :         **OPINION**

TRIS PHARMA, INC.  and        :
YU-HSING TU,

                                    :

       Defendants.         :
———————————————————

**WOLFSON, United States District Judge:**

Presently before the Court is an appeal by Plaintiffs Reckitt Benckiser Inc. ("Reckitt") and

UCB Manufacturing, Inc. ("UCB") of an October 21, 2011 Order by the Magistrate Judge

granting Defendants Tris Pharma Inc.'s ("Tris") and Yu-Hsing Tu's ("Dr. Tu")(collectively

"Defendants") application to strike the supplemental expert report of Stephen R. Byrn, Ph.D.

("Dr. Byrn").  The instant appeal arises out of a Complaint filed by Plaintiffs alleging, inter alia,

infringement of U.S. Patent No. 5,980,882 ("the '882 patent") by Defendants' submission of an

Abbreviated New Drug Application ("ANDA") to market a generic version of the over-the-

counter cough syrup Delsym, which is made by Reckitt and allegedly covered by the '882 patent

owned by UCB.  For the reasons that follow, the Court denies Plaintiffs' appeal and affirms the

Magistrate Judge's October 21, 2011 Order in its entirety.

1

## I. FACTS AND PROCEDURAL HISTORY

Because this patent infringement matter has a significant discovery and procedural history, the Court will only recount facts relevant to the instant motion.

In November 2010, this Court issued an Opinion construing various claims of the '882 patent.  Importantly, and in relevant part, Claim 23 of the patent recites a stability limitation requiring "[a] method for improving the stability of a pharmaceutical composition that contains a drug-resin complex comprising adding a chelating agent in an amount effective to reduce the rate of degradation of the drug in the drug-resin complex by more than 20 percent over twelve months of storage at room temperature relative to an otherwise identical pharmaceutical composition without the chelating agent."  Thus, to prove infringement, Plaintiffs must establish that the accused product (which contains EDTA) reduces the rate of degradation by more than 20 percent over a twelve month period as compared to an identical product made without EDTA.

In February 2011, this Court issued an Opinion dismissing a Breach of Contract count from the Amended Complaint. Thereafter, in May 2011, the parties met and conferred regarding certain outstanding discovery issues.  As a result, the parties agreed to the following schedule:

• June 10, 2011: completion of document production

• July 8, 2011: the close of fact discovery

• July 27, 2011: opening expert reports due

• August 24, 2011: rebuttal expert reports due

• September 16, 2011: close of expert discovery

The Magistrate Judge "SO ORDERED" the agreed-upon schedule on June 3, 2011.

Subsequently, the parties had at least two additional conferences in front of the Magistrate Judge.  In addition, counsel for Plaintiffs and Defendants reached out to this Court to request an imminent trial date.  Initially, the Court scheduled the trial for November 14, 2011 with consent of the parties.  However, due to this Court's schedule, and with the parties' consent, trial was postponed two weeks until November 28, 2011.

Thereafter, and in accordance with the Scheduling Order, on July 27, 2011, Plaintiffs timely served the opening expert report of Dr. Stephen R. Byrn ("Opening Report").  Importantly,  and in relevant part, in the Opening Report, Dr. Byrn made a single reference to an independent laboratory's manufacture of Defendants' ANDA product.  Specifically, Dr. Byrn stated:

> I understand that Counsel for Reckitt Benckiser and UCB requested an independent laboratory to manufacture Tris's Proposed ANDA product with and without the EDTA-washed resin and conduct stability testing at room temperature over twelve months.  The data available after nine months establishes that the EDTA-washed resin in Tris's proposed ANDA product reduces the rate of degradation by 57.3% over nine months and meets this part of the claim limitation.  Following normal linear degradation, a similar reduction in degradation would occur after twelve months.  I summarize the available data below. I reserve the right to supplement this report as additional data becomes available.

Opening Report ¶ 67.

On August 24, 2011, Plaintiffs timely served Dr. Byrn's rebuttal expert report ("Rebuttal Report") and Defendants timely submitted the rebuttal report of Dr. Michael Mayersohn which

responded, in part, to Dr. Byrn's contention that the third-party data showed infringement.

Specifically, in paragraph 34, Dr. Mayersohn stated that although Dr. Byrn attempted to show

infringement by pointing to independent third-party testing, such a comparison was not valid

because:

> [I]t would not be valid to assume that a formulation made in a laboratory with
> different equipment and different scale of manufacture is the same as Tris' ANDA
> product. Moreover, Dr. Byrn did not identify and made no comparison of the
> manufacturing processes, scale, or equipment, all of which will affect the stability
> of the final product . . . It is unscientific and unreliable to provide an opinion
> on data which one has not participated in collecting and/or reviewed in detail. From
> Dr. Byrn's report and the Materials Cited. . . it appears that Dr. Byrn has done
> neither and has offered his opinion without an analysis of the methods by which
> the date was obtained, the manufacturing processes, scale, or equipment used by
> the third party testing laboratory.

Weiss Cert., Ex. 8, Mayersohn Responsive Expert Report ("Mayersohn Report") ¶ 34.[1]

Thereafter, on August 26, 2011, Defendants filed a motion for summary judgment, based,

in part, on the opening and rebuttal reports of Dr. Byrn. Specifically, in their moving brief,

Defendants argued that summary judgment was warranted on Plaintiffs' infringement claim, in

part, because Dr. Byrn's opinion in the Opening Report that an independent laboratory's

"manufacture of Tris's Proposed ANDA product with and without the EDTA-washed resin" over

---

[1]On November 17, 2011, Defendants sent a letter to this Court requesting that the Court not
consider various exhibits that Plaintiffs submitted in support of their appeal. Specifically,
Defendants contend that since those papers were not before Judge Arpert, they are not
appropriate for this Court's consideration. The Court agrees. Indeed, other than the expert report
of Michael Mayersohn, the Court will not consider anything that was not before Judge Arpert.
Moreover, to the extent that this Court is considering the Mayersohn expert report, the Court is
not relying on the report for its substance, but, instead, is only considering it to demonstrate the
extent to which Plaintiffs' untimely submission of the Supplemental Report caused prejudice to
Defendants.

a ninth month period was wholly unsupported by any reasonable basis and, therefore, that Plaintiffs could not meet the limitations set forth in Claims 23, 24, 25, 26 and 36.[2]

Subsequently, on September 13, 2011, after receiving Defendants' summary judgment motion, but prior to filing any opposition thereto, and without seeking permission of the Court, Plaintiffs served the supplemental expert report of Dr. Byrn ("Supplemental Report"). Importantly, and in relevant part, the Supplemental Report analyzed, for the first time, the independent laboratory tests conducted between August 2010 and September 2011 of the samples manufactured by Plaintiffs that allegedly replicate Defendants' accused product. Indeed, unlike the Opening Report which contained one paragraph discussing the 9-month stability testing of an "independent laboratory," the Supplemental Report contained several pages of opinions on infringement and referenced hundreds of pages of new documents containing data from Aptuit, the independent laboratory that manufactured Defendants' proposed ANDA product and performed stability testing on the product.

Thereafter, on September 21, 2011, Plaintiffs filed a Brief in Opposition to Defendants' summary judgment motion. In support of their Opposition, Plaintiffs attached the Supplemental Report of Dr. Byrn and, additionally, included a declaration from Dr. Byrn containing information from the Supplemental Report.

As a result, on September 21, 2011, Defendants immediately filed an informal motion before the Magistrate Judge to strike the Supplemental Report. In the motion, Defendants alleged that they were unduly prejudiced by the late and unauthorized submission of the

---

[2]The Court notes that in a letter dated November 4, 2011, counsel for Plaintiffs voluntarily dismissed claims 24 and 25 of the '882 patent.

Supplemental Report, which contained substantial new data and information that went well beyond the scope of Dr. Byrn's Opening Report.  Specifically, Defendants argued that "the new report is the first time that Dr. Byrn expresses any opinion on the manufacturing and testing methods used by Aptuit, despite the fact that this information was available in August 2010, almost a full year before opening expert reports were due . . . This is also the first time the Dr. Byrn renders opinions on the reliability of Aptuit's alleged results, including statistical analysis and kinetic modeling."  Defs' Mot. to Strike (Sept. 21, 2011)("Def's Sept. 21 Letter").  Moreover, Defendants argued that they were additionally prejudiced by "[P]laintiffs' concealment that samples were being manufactured and tested by Aptuit throughout fact discovery.  Underlying data from third party laboratories . . . were requested by [D]efendants yet never produced."  Id.

Dr. Byrn was deposed on October 3, 2011.  During his deposition, Dr. Byrn appears to admit that he did not analyze the data about which he opined in paragraph 67 of his Opening Report, and, moreover, that his only understanding that the Aptuit third party data replicated Defendants' products and method was based on what Plaintiffs' attorneys told him.  Defs' Reply in Support of Mot. to strike (Oct. 7, 2011)("Defs' Oct. 7 Letter").  Specifically, Defendants cite the following deposition testimony of Dr. Byrn:

Q.  Now, when you say you understand that counsel for Reckitt Benckiser UCB requested the independent laboratory and you put the data here in paragraph 67, what other information did you have at the time about how the tests were done?

A. The understanding I had was that they had repeated the process, the Tris process, using the Tris batch records and the Tris contents and the procedure that Tris had used.

6

Q. And what understanding was that based – on what was that understanding based?

A. What I was told.

Q. By whom?

A. By the attorneys.

\* \* \*

Q. At the time you prepared this expert report, you did not know that the work that was told to you by the attorneys for plaintiffs had been done by Aptuit; true?

A. I don't think I knew that.

Q. You had not audited the Aptuit methods; correct?

A. I understood that it was a replication of the Tris method.

Q. Because that's what the lawyers told you; correct?

A. Correct.

Q. You didn't independently verify that?

A. Correct.

Defs' Ex. 5, 367:2-15 and 368:18 – 369:8.

Subsequently, on October 21, 2011, the Magistrate Judge held oral argument on Defendants' Motion to Strike the Supplemental Report.  Following the parties' arguments, the Magistrate Judge ruled that:

> [I]t is somewhat inexplicable to the Court that plaintiffs would not have sought leave of the Court at any juncture to extend the time within which expert reports could be produced. Instead, plaintiffs rely upon a reference [] in the original report of their expert, reserving the right upon receipt of additional data to supplement their report. Notwithstanding the deadlines established by the Court or service of

7

expert reports and concluding expert discovery, that report was not served until after the rebuttal expert reports were served, expert depositions were taken, the Court acknowledges that it was served three days short of the deadline set for the close of expert discovery, but that somewhat begs the question.  Summary judgment briefs, motions and briefs were filed in reliance on the state of expert discovery existing at the end of August. And now those motions are fully briefed and pending before Judge Wolfson.

I accept the articulation of the prejudice which befalls the defendant as a result of the late service of this report, not only with respect to its selection of experts, and decisions made with respect to which experts defendants intended to rely on to rebut the information contained in the plaintiffs' expert report, but also with respect to the resources which have been expended in preparing this case in reliance on the expert reports that were initially served . . .[a]nd that the ability to timely cure the prejudice in light of the pending trial date would present an undue burden to the defendants.

October 21, 2011 Transcript ("Tr.") 34:18-35:22.

Subsequently, the Magistrate Judge entered an Order striking the Supplemental Report. Thereafter, Plaintiffs filed the instant appeal of the Magistrate Judge's decision.  Because of the pending Novembe 28, 2011 trial date, the Court ordered an expedited briefing schedule with Defendants filing a brief in opposition to the appeal on November 8, 2011 and Plaintiffs filing a reply brief in support of their appeal on November 14, 2011.

## II. STANDARD OF REVIEW

"A United States Magistrate Judge may 'hear and determine any [non-dispositive] pretrial matter pending before the court.'" Cardona v. Gen. Motors Corp., 942 F.Supp. 968, 971 (D.N.J.1996) ( quoting 28 U.S.C. § 636(b)(1)(A)); see also Fed.R.Civ.P. 72(a).  A magistrate judge's ruling concerning discovery is non-dispositive.  Eisai Co., Ltd. v. Teva Pharmaceuticals

8

USA, Inc., 629 F.Supp.2d 416, 433 (D.N.J.2009).  The district court will only reverse a magistrate judge's decision on these matters if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); L. Civ. R. 72.1(c)(1)(A).  A magistrate judge's finding is clearly erroneous when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, "is left with the definite and firm conviction that a mistake has been committed." Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co., 131 F.R.D. 63, 65 (D.N.J.1990) (quotations omitted).  "A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." Andrews v. Goodyear Tire & Rubber Co., Inc., 191 F.R.D. 59, 68 (D.N.J.2000) (citations omitted).  A district court may not take into consideration any evidence that was not put forth before the magistrate judge when reviewing the magistrate judge's factual determination.  Haines v. Liggett Group, Inc., 975 F.2d 81, 92 (3d Cir.1992).  Under the clearly erroneous standard, the reviewing court will not reverse the magistrate judge's determination even if the court might have decided the matter differently. Cardona v. Gen. Motors Corp., 942 F.Supp. at 971 (quoting Toth v. Alice Pearl, Inc., 158 F.R.D. 47, 50 (D.N.J.1994).

In contrast, "the phrase 'contrary to law' indicates plenary review as to matters of law." Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d Cir.1992); accord In re Human Tissue Products Liability Litigation, No. 06-135(WJM), 2009 WL 1097671, *1 (D.N.J. Apr.23, 2009) (citation omitted); see also, Mruz v. Caring, Inc., 166 F.Supp.2d 61, 66 (D.N.J.2001) ("[T]his Court will conduct a de novo review of a Magistrate Judge's legal conclusions."); accord Cooper Hosp./Univ. Med. Ctr. v. Sullivan, 183 F.R.D. 119, 127 (D.N.J.1998).  "A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." Kounelis v. Sherrer, 529

F.Supp.2d 503, 518 (D.N.J.2008) (citing <u>Gunter v. Ridgewood Energy Corp.</u>, 32 F. Supp.2d 162,

164 (D.N.J.1998)).

    "Where a magistrate judge is authorized to exercise his or her discretion, the decision will be

reversed only for an abuse of that discretion." <u>Cooper Hosp./Univ. Med. Ctr. v. Sullivan</u>, 183

F.R.D. 119, 127 (D.N.J.1998); <u>see also</u> 12 Charles Alan Wright, Arthur R. Miller & Richard L.

Marcus, Federal Practice and Procedure: Civil 2d § 3069 (2d ed.1997)("many matters such as

discovery scheduling or disputes might better be characterized as suitable for an

abuse-of-discretion analysis").  The deferential standard of review is particularly appropriate in

the case where the magistrate judge managed the case from the outset, and thus has a thorough

knowledge of the proceedings.  <u>Cooper Hosp.</u>, 183 F.R.D. at 127 (quoting <u>Public Interest</u>

<u>Research Group v. Hercules, Inc.</u>, 830 F.Supp. 1525, 1547 (D.N.J.1993), <u>aff'd on other grounds</u>

<u>and rev'd on other grounds</u>, 50 F.3d 1239 (3d Cir.1995)).  "An abuse of discretion occurs: 'when

the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that

discretion is abused only where no reasonable man would take the view adopted.'" <u>Richards v.</u>

<u>Johnson & Johnson, Inc.</u>, No. 05-3663(KSH), 2008 WL 544663, at * 2 (D.N.J. Feb.26, 2008)

(quoting <u>Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.</u>, 540 F.2d 102,

115 (3d Cir.1976) ( internal quotation omitted )); <u>see also</u> <u>United States v. Soto-Beniquez</u>, 356

F.3d 1, 30 (1st Cir.2003), cert. denied, 541 U.S. 1074 (2004) ("An abuse of discretion occurs

when a "material factor deserving significant weight is ignored, when an improper factor is relied

upon, or when all proper and no improper factors are assessed, but the court makes a serious

mistake in weighing them.") ( internal citations omitted )).  "This test displays considerable

deference to the determination of magistrates in such matters."  <u>Port Auth. v. Affiliated FM Ins.</u>

Co., 2001 U.S. Dist. LEXIS 7579 at * 5 (quoting 7 Moore's Federal Practice ¶ 72.03(7.-3) at 72-42 (1989)). However, an error of law or finding of fact that is clearly erroneous may indeed constitute such abuse.  See, e.g., Marshak v. Treadwell, No. 08-1771, 2009 WL 1886153, * 4 (3d Cir. Jul.2, 2009) (noting on review of district court's contempt decision for abuse of discretion that reversal is appropriate "only where the decision 'is based on an error of law or a finding of fact that is clearly erroneous.' "); see also Republic of the Philippines v. Pimentel, 553 U.S. 851 (2008) ( quoting Koon v. United States, 518 U.S. 81, 99-100 (1996) for proposition that "a court 'by definition abuses its discretion when it makes an error of law'").

Initially, the Court notes that the Magistrate Judge's decision to strike Plaintiff's Supplemental Expert Report  will be reviewed under the abuse of discretion standard.  Indeed, contrary to Plaintiff's suggestion, because the matter before the Magistrate Judge was related to the ongoing management of a case in which he had been intimately involved, and was related to a case management Order entered by the Magistrate Judge, the Court finds that review under the abuse of discretion standard is proper.  See, e.g., Bailey v. Viacom, Nos. 10–3236, 10–3237, 10–3238, 2011 WL 2419915, at *3 (3d Cir. June 16, 2011).[3]


## III. ANALYSIS

In this appeal, Plaintiffs argue that this Court should reverse the Magistrate Judge's decision to strike the Supplemental Report.  Specifically, Plaintiffs contend that under Meyers v.

---

[3]The Court notes, however, that even were this Court to consider the instant appeal under the clearly erroneous or contrary to law standard, for the reasons set forth in this Opinion, the Court would still affirm the Magistrate Judge's decision to strike the Supplemental Report.

Pennypack Woods Home Ownership Ass'n, 559 F.2d 894 (3d Cir. 1977), the Magistrate Judge should not have imposed the "extreme" sanction of excluding the Supplemental Report.  Pls' Br. at 2.  In response, Defendants argue that the Magistrate Judge properly considered the Pennypack factors in excluding the Supplemental Report under Fed. R. Civ. P. 37.  The Court agrees and for the reasons set forth below, the Court will affirm the Magistrate Judge's October 21, 2011 Order in its entirety.

It is well established that a court has discretion to exclude evidence for a party's failure to adhere to the schedule set by the court.  In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791 (3d Cir. 1994).  The Third Circuit has established four factors that a court should balance before precluding evidence.  Meyers, 559 F.2d 894.  Along with the importance of the excluded testimony, the Pennypack factors include: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with the court's order.  Id. at 904-05.

Pursuant to the first factor, Plaintiffs argue that Defendants were neither surprised nor prejudiced by the Supplemental Report.  In support of their argument, Plaintiffs argue that not only did Defendant's expert Dr. Mayersohn testify that he was not surprised to receive Dr. Byrn's supplemental report, but that because the Magistrate Judge did not "mention . . .[the surprise] aspect of the first Meyers factor," he applied the wrong legal standard.  In addition, Plaintiff contends that Tris was not prejudiced because: (1) the supplemental report was not new; (2) there was sufficient time for Tris to address the supplemental data; (3) nothing precluded Tris from

conducting its own tests prior to trial; (4) Tris rushed to file a summary judgment motion; and (5) Tris' inability to find a qualified expert was not Plaintiffs' fault.

Initially, the Court notes that the first <u>Pennypack</u> factor requires a court to consider "the prejudice <u>or</u> surprise" suffered by the party against whom the excluded witness would testify. <u>Meyers</u>, 559 F.2d at 904-05 (emphasis added).  Because the factor is written in the disjunctive, it does not require consideration of both prejudice and surprise, thus, the Magistrate Judge did not abuse his discretion (nor was it clearly erroneous or contrary to law ) to consider only the prejudice to Tris.  <u>See, e.g.</u>, Norman J. Singer and J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 21:14 (2011)(noting, in the context of statutory interpretation that the words "and" and "or" are not interchangeable and that  "[t]he disjunctive 'or' usually, but not always, separates words or phrases in the alternate relationship, indicating that either of the separated words or phrases may be employed without the other. The use of the disjunctive usually indicates alternatives and requires that those alternatives be treated separately.").[4]

In that regard, the Court notes that in the underlying matter, the Magistrate Judge was presented with three rounds of letter briefs and oral argument which substantially addressed the prejudice factor under <u>Pennypack</u>.   Indeed, in his oral ruling, the Magistrate Judge specifically

---

[4]Moreover, the Court notes that the record supports the idea that Defendants were, in fact, surprised by the Supplemental Report.  For example, at the oral argument, counsel for Defendants stated, "Now, plaintiffs say, 'Well, you should have known.' Well, I should have known what? How should I have known that Dr. Byrn was going to submit a supplemental expert report saying that work that had been going on for over a year, that he was not involved with, did not supervise, did not audit, did not validate, could have done that in his opening expert report if he wanted to, how am I supposed to know that that is going to come in for the first time several months later only after I point out in a summary judgment motion that having an expert just acting as a conduit and a mouthpiece repeating what was told to him by counsel is inadequate to carry the burden of proof?" Oct. 21 Tr. 7:4-15; <u>see also</u>, <u>infra</u>, p. 16.

noted that he had considered the written materials submitted by the parties as well as the arguments set forth on the record.  Tr. 34:14-17.  Moreover, the Magistrate Judge stated that in light of the written and oral submissions, he "accept[ed] the articulation of the prejudice which befalls the defendant as a result of the late service of this report."  Tr. 35:11-13.  Specifically, the Magistrate Judge credited Defendants' assertions that the prejudice included not only Defendants' selection of its experts and "decisions made with respect to which experts defendants intended to rely on to rebut the information contained in the plaintiffs' expert report, but also with respect to the resources which have been expended in preparing this case in reliance on the expert reports that were initially served."  Id. 35:13-20.  As a result, the Court finds that the Magistrate Judge did not abuse his discretion by finding that the first Pennypack factor supported a ruling of exclusion.

Next, Plaintiffs argue that any prejudice suffered by Defendants could easily be cured, that Defendants failed to mitigate the prejudice, and, moreover, that the Magistrate Judge's failure to "properly analyze this factor was a misapplication of law."  Pls' Br. at 16.  In response, Defendants contend that they took various steps to mitigate the prejudice caused by the untimely and unexpected Supplemental Report.  Moreover, Defendants argue that the Magistrate Judge properly recognized that because trial was scheduled to begin on November 28, 2011, approximately a month after oral argument, any prejudice could not be cured in time for the agreed upon trial date.  The Court agrees.

In the underlying matter, the Magistrate Judge expressly held that Defendants' ability to cure the prejudice caused by the Supplemental Report imposed an undue burden in light of the pending November 28, 2011 trial date.  Tr. 35:21-22.  Specifically, during oral argument, counsel for Defendants represented that he filed a summary judgment motion based on the information

14

contained in the opening and rebuttal reports.  As a result, counsel for Defendants argued that the Supplemental Report was "sprung willfully when [Plaintiffs] knew the data wouldn't be ready with an inadequate report after I file my motion for summary judgment when I do not have an expert I would like to have address this, and cannot have my client put it in."  Tr. 13:4-8.  Indeed, this Court is compelled to note that Plaintiffs were actively involved in both suggesting dates for expert discovery deadlines as well as requesting an imminent trial date from this Court.  Thus, the Court finds Plaintiffs' claims that Defendants were not prejudiced by the untimely submission of the Supplemental Report and that they could cure any prejudice caused by the Report are disingenuous in light of Plaintiffs' certain knowledge that the data resulting from the third party testing would not be completed until September 2011, well after expert reports were due and just weeks short of trial.

In addition, counsel for Defendants argued that since receiving the Supplemental Report on September 13, 2011, he has diligently sought an expert to respond to the opinions contained therein.  However, he has not been able to locate an expert that is both qualified to respond and that would be available for trial on November 28, 2011.  Tr. 22-23.  Because the Magistrate Judge credited the representations of counsel for Defendants, the Court finds that the Magistrate Judge did not abuse his discretion by finding that Defendants would be unable to cure the prejudiced caused by the Supplemental Report in time for a November 28, 2011 trial.

Next, Plaintiffs argue that because the Magistrate Judge's ruling was made without an express finding that Plaintiffs acted in bad faith or that they flagrantly disregarded a Court Order, the decision to strike was improper.  The Court does not agree.  In the underlying matter, the Magistrate Judge expressly held that "it is somewhat inexplicable to the Court that plaintiffs

15

would not have sought leave of the court at any juncture to extend the time within which expert reports could be produced.  Instead, plaintiffs rely upon a reference[] in the original report of their expert, reserving the right upon receipt of additional data to supplement their report. Notwithstanding the deadlines established by the Court or service of expert reports and concluding expert discovery, that report was not served until after the rebuttal expert reports were served, expert depositions were taken. . ." Tr. 34: 18 -35:3.   Moreover, in response to Plaintiffs' counsel's suggestion that "there was no surprise that we were going to supplement the report to include 12-month data," Tr. 14:12-13, the Magistrate Judge stated, "it may have been no surprise to you folks, but what about the arguments regarding the case management order, regarding the deadlines established by the Court? Did you feel that all of that was of no moment in light of the one line in the report that says 'I reserve the right to submit a supplemental report.'" Tr. 14:16-21. In addition, the Magistrate Judge stated that "we established a schedule to bring to an orderly conclusion expert discovery in this case which apparently the plaintiffs thought was somehow trumped by Dr. Byrn having unilaterally reserved the right to submit a supplemental report when he felt it was appropriate."  Tr. 15:4-8.  Further, the Magistrate Judge questioned the Plaintiffs as to how they would rebut the contention that they knew that would not have twelve months of data "at the time that the deadlines [in the Scheduling Order] were being set."  Tr. 15:18-23.  Finally, the Magistrate Judge stated that despite having numerous conferences with the Court, Plaintiffs expressly made a determination that they did not "need to adjust the schedule to accommodate completion of the testing."  Tr. 16:2-6.  For these reasons, the Court finds that contrary to Plaintiffs' suggestion, the record does suggest that the Magistrate Judge found that Plaintiffs had acted in bad fath and in blatant disregard of the Scheduling Order.  Indeed, that determination is

easily supported by the record which supports a "gotcha" mentality – serving the Supplemental Report only after agreed upon expert dates had passed and in reliance thereon, Defendants filed their motion for summary judgment.  As a result, the Court finds that the Magistrate Judge did not abuse his discretion in finding that the fourth Pennypack factor was satisfied and determining that exclusion of the Supplemental Report is the appropriate remedy.

Finally, Plaintiffs argue that because the Magistrate Judge failed to analyze the importance of the Supplemental Report, his ruling constituted legal error.  It is well-established that in considering whether to exclude testimony, "[a]n important final consideration is 'the importance of the excluded testimony' to the proffering party's case."  AstraZeneca AB v. Mutual Pharmaceutical Co., Inc., 278 F. Supp. 2d 491, 504 (E.D. Pa. 2003)(quoting Meyers, 559 F.2d at 904; citing Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 302 (3d Cir.1991) (confirming circuit's "consistent position" that "the importance of the excluded testimony" is a factor); Total Containment, Inc. v. Dayco Products, Inc., 177 F. Supp.2d 332, 341 (E.D.Pa.2001) (stating five-factor test, including four Meyers factors plus "importance" of evidence as fifth factor); Gibson v. National R.R. Passenger Corp., 176 F.R.D. 190, 192 (E.D.Pa.1997) ("The importance of the excluded testimony is an important final consideration.").  However, the importance of the excluded testimony is not dispositive.  Indeed, in AstraZeneca, the court considered the importance of a prior art patent and noted that if admitted, that patent would defeat plaintiffs' summary judgment motion; despite the importance of the patent, hwoever, the court still excluded the patent as untimely.  AstraZeneca, 278 F. Supp. 2d, 504-508, 516,517

Similarly, in the instant matter, the Court finds that while the record clearly demonstrates the importance of the Supplemental Report to Plaintiffs' case, this factor alone is not dispositive.

17

Indeed, the Magistrate Judge made specific findings that although Plaintiffs appeared at numerous conferences with the Court and that Plaintiffs knew that they would not have the requisite 12 months of data as early as the time for expert reports set forth in the Scheduling Order, which was crafted in consultation  with all parties, nonetheless, Plaintiffs affirmatively chose not to seek an extension of time to file their supplemental expert report nor did they seek leave to file the Supplemental Report.  In addition, Plaintiffs have no one to blame but themselves for not accounting for these testing timetables or having their expert, Dr. Byrn, presumably review the third party testing data, rather than relying on counsel.  Moreover, in light of the Magistrate Judge's determination that the Supplemental Report would be prejudicial to Defendants and that Defendants would face an undue burden in curing the prejudice in time for trial on November 28, 2011, the Court finds that Magistrate Judge's failure to expressly consider the importance of the Supplemental Report to Plaintiffs was neither an abuse of discretion nor did it constitute legal error.


**IV. CONCLUSION**

Based on the foregoing, the Court will affirm the October 21, 2011 Order of the Magistrate Judge striking the Supplemental Report.  An order will be entered consistent with this Opinion.


Dated: December 21, 2011                           /s/ Freda L. Wolfson
                                                   Freda L. Wolfson, U.S.D.J.